1

2

3

4

5            UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7 JOANN WILLIAMS,

8                 Plaintiff,

NO: 2:14-CV-0232-TOR

9     v.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

10 CAROLYN W. COLVIN, Acting
Commissioner of Social Security

11 Administration,

12              Defendant.

13

14      BEFORE THE COURT are the parties' cross-motions for summary

15 judgment (ECF Nos. 13, 18). Dana C. Madsen represents Plaintiff. Lars J. Nelson

16 represents Defendant. This matter was submitted for consideration without oral

17 argument. The Court has reviewed the administrative record and the parties'

18 completed briefing and is fully informed. For the reasons discussed below, the

19 Court grants Defendant's motion and denies Plaintiff's motion.

20 ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1117 (internal quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    The claimant bears the burden of proof at steps one through four above.

2    *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

3    the analysis proceeds to step five, the burden shifts to the Commissioner to

4    establish that (1) the claimant is capable of performing other work; and (2) such

5    work "exists in significant numbers in the national economy."  20 C.F.R. §§

6    404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7                                    **ALJ'S FINDINGS**

8        Plaintiff protectively filed applications for a period of disability and

9    disability insurance benefits on March 24, 2011, and for supplemental security

10   income on March 4, 2011.  Tr. 173-74, 175-83, 184-92.  These applications were

11   denied initially and upon reconsideration, and Plaintiff requested a hearing.  Tr. 65-

12   73, 74-82, 119-23, 124-29, 130-31.  A hearing was held with an Administrative

13   Law Judge ("ALJ") on December 4, 2012.  Tr. 35-62.  The ALJ rendered a

14   decision denying Plaintiff benefits on January 18, 2013.  Tr. 9-27.

15       The ALJ found that Plaintiff met the insured status requirements of Title II

16   of the Social Security Act through December 31, 2014.  Tr. 14.  At step one, the

17   ALJ found that Plaintiff had not engaged in substantial gainful activity since

18   October 18, 2009, the alleged onset date.  Tr. 14.  At step two, the ALJ found that

19   Plaintiff had the following severe impairment: major depressive disorder.  Tr. 14.

20   At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meet or medically equal a listed impairment. Tr.

15. The ALJ then determined that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: she is able to understand,
> remember, and carry out simple one to two-step instructions or tasks;
> she is able to maintain attention and concentration for two-hour
> intervals between regularly scheduled breaks; and she should be
> limited to rare interactions with the general public and occasional
> interactions in small groups with co-workers.

Tr. 17. At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work as an office helper, shipping and receiving clerk, order picker, fast

food worker and manager, short order cook, machine packager, or hand packager.

Tr. 21. At step five, the ALJ found that Plaintiff could perform the representative

occupations of fish cleaner, dining room attendant, and laundry worker. Tr. 22. In

light of the step five finding, the ALJ concluded that Plaintiff was not disabled

under the Social Security Act and denied her claims on that basis. Tr. 23.

The Appeals Council denied Plaintiff's request for review on May 22, 2014,

making the ALJ's decision the Commissioner's final decision for purposes of

judicial review. Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability benefits and supplemental security income under Titles II and XVI of

the Social Security Act. Plaintiff raises the following two issues for review:

1    (1) Whether the ALJ properly discounted Plaintiff's credibility; and

2    (2) Whether the ALJ properly weighed the medical opinion evidence.

3    ECF No. 13 at 12-19. This Court addresses each issue in turn.

4                            **DISCUSSION**

5    **A.    Adverse Credibility Finding**

6         Plaintiff contends the ALJ improperly discredited her symptom testimony.

7    *Id.* at 12. In support, Plaintiff asserts that (1) the medical evidence supports her

8    testimony regarding her mental health symptoms; and (2) her failure to seek

9    treatment was justified because her condition did not improve with medication, she

10   could not afford treatment, and her mental condition interfered with her ability to

11   seek treatment. *Id.* at 12-16.

12        "In assessing the credibility of a claimant's testimony regarding subjective

13   pain or the intensity of symptoms, the ALJ engages in a two-step analysis."

14   *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

15   2009)). First, the ALJ must determine whether the claimant has proved the

16   existence of a physical or mental impairment with "medical evidence consisting of

17   signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908, 416.927; *see*

18   *Molina*, 674 F.3d at 1112. A claimant's statements about his or her symptoms

19   alone will not suffice. 20 C.F.R. §§ 416.908, 416.927. "Once the claimant

20   produces medical evidence of an underlying impairment, the Commissioner may

not discredit the claimant's testimony as to subjective symptoms merely because

they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228,

1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995));

*Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the

impairment "could reasonably be expected to produce the pain or other

symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment.  *Bunnell*, 947 F.2d at 345-56.  This rule recognizes that the severity of

a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347

(citation omitted).

      However, an ALJ may conclude that the claimant's subjective assessment is

unreliable, so long as the ALJ makes "a credibility determination with findings

sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958

(9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may

find the claimant's allegations of severity to be not credible, the adjudicator must

specifically make findings which support this conclusion.").  If there is no

evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d

661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must

specifically identify the testimony she or he finds not to be credible and must

explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see Berry*, 622 F.3d at 1234 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

In weighing the claimant's credibility, the ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Id.* (quoting *Tommasetti*, 533 F.3d at 1039).

Here, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Tr. 18. Because there is no evidence of malingering in this case, the Court must determine whether the ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's testimony regarding the limiting effect of her symptoms. *Chaudhry*, 688 F.3d at 672.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    Although Plaintiff contends that the ALJ improperly conducted an adverse

2    credibility analysis, this Court disagrees.  The ALJ provided the following specific,

3    clear, and convincing reasoning supported by substantial evidence for finding

4    Plaintiff's subjective statements not fully credible: (1) the medical evidence of

5    record did not support the degree of limitation alleged by Plaintiff; and (2)

6    Plaintiff's failure to seek treatment was inconsistent with the disabling symptoms

7    alleged.  Tr. 18-20.

8         First, the ALJ found the medical evidence, which signaled a broader

9    development of improvement, did not support the degree of limitation alleged by

10   Plaintiff.  Although Plaintiff testified to debilitating depressive symptoms, such as

11   anhedonia, a lack of motivation, discouragement, difficulty sleeping, and difficulty

12   concentrating, the ALJ found Plaintiff's condition improved with medication and

13   thus the record did not support the degree of limitation alleged.  Tr. 18-19.  For

14   instance, after Plaintiff was hospitalized for depression in November 2009, she

15   reported "feeling much better" with use of medication.  Tr. 19 (citing Tr. 289); *see*

16   *also* Tr. 19 (citing Tr. 310 ("[Claimant] stated that the medication had been

17   helpful.")).  Plaintiff subsequently discontinued her medication, reporting to a

18   provider that she did not want to take them anymore.  Tr. 19 (citing Tr. 370).

19   However, one week after restarting medication in August 2010, Plaintiff was

20   observed by a provider to be "more animated" with an "increased range of affect."

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

Tr. 19 (citing Tr. 374).  Similarly, in September 2010, after continued use of medication, Plaintiff's provider noted "significant improvement" in Plaintiff's condition, finding that Plaintiff appeared "brighter and more interactive."  Tr. 19 (citing Tr. 379); *see also* Tr. 378 (treatment notes following antidepressant medication use noted Plaintiff reporting that she was "feeling better").  In December 2010, Plaintiff presented for refills of her medications—several months after she ran out—and reported that "she feels better when she takes her medications, less depressed, and she sleeps better when she has them."[1]  Tr. 380.  Although the ALJ acknowledged that Plaintiff's affect was still limited, improvement was documented.  Tr. 19 (citing Tr. 374, 379).

While "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," an ALJ may rely on examples of "broader development" of improvement when finding a claimant's testimony not credible.  *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014) ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a

---

[1] Although prior to the relevant period of alleged disability, the ALJ also noted a similar trend in 2006: "The claimant reported that she had significant depression several years prior, but she was placed on medication and did 'quite well' until she stopped using them around 2006."  Tr. 18 (citing Tr. 281).

1    broader development to satisfy the applicable 'clear and convincing' standard.").

2    Despite Plaintiff's contention here, the ALJ did not inappropriately "cherry pick"

3    periods of temporary well-being; rather, the ALJ noted that Plaintiff's condition

4    consistently improved when she followed her prescribed course of medication and

5    discredited her testimony on that basis. *See Warre v. Comm'r of Soc. Sec. Admin.*,

6    439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled

7    effectively with medication are not disabling for the purpose of determining

8    eligibility for . . . benefits.").

9         Second, and relatedly, the ALJ found Plaintiff's statements concerning the

10   severity of her limitations inconsistent with her failure to follow a prescribed

11   course of treatment.  Despite Plaintiff's improvement with medication use, detailed

12   above, the ALJ noted over a one-year gap in treatment, which cast doubt on the

13   severity of Plaintiff's symptoms: "The claimant's lack of follow-up for over a year

14   again suggests that her condition did not significantly interfere with her

15   functioning."  Tr. 20.  Although Plaintiff attempted to explain her lack of

16   treatment, the ALJ did not find these explanations convincing.  For instance,

17   although Plaintiff asserted an inability to afford medications, the ALJ noted that (1)

18   she testified at the hearing that she had medical insurance through the state, Tr. 19,

19   and (2) even if Plaintiff did not have insurance, the lack of insurance would not

20   have precluded Plaintiff from receiving treatment considering the availability of

1    patient assistance programs.  Tr. 20 (citing Tr. 390 ("Learned [patient] can get

2    Zyperxa, which was helpful in the past, on a patient assistant program, this is

3    prescribed.")); *see* Tr. 381 (referring Plaintiff to Project Access Coordinator to

4    determine whether there may be resources available to help with expense of

5    medications).  Moreover, the ALJ found inconsistencies in Plaintiff's reasoning for

6    not following a prescribed course of treatment: Plaintiff reported to providers that

7    she stopped taking medication because "she did not want to anymore," and that she

8    could not afford medications but would try counseling, which the ALJ determined

9    was inconsistent because someone who could not afford medications could likely

10   not afford counseling.  Tr.  20.  Finally, the ALJ had reason to doubt Plaintiff's

11   commitment to counseling.  As the ALJ had previously noted, although Plaintiff

12   was enrolled in counseling in February 2010, she only met with a therapist once

13   and failed to appear at subsequent appointments or otherwise respond to

14   voicemails or letters.  Tr. 19 (citing Tr. 293).  Plaintiff was subsequently referred

15   to a counselor in February 2012, Tr. 20 (citing Tr. 391); however, there is no

16   evidence that Plaintiff complied with this referral, Tr. 20.  Indeed, Plaintiff

17   reported to one provider that she "did not follow through with counseling because

18   she did not like being there."  Tr. 402.  Accordingly, Plaintiff's inadequately

19   explained failure to follow a prescribed course of treatment provided another clear

20   and convincing reason for discounting her credibility.  *See Tommasetti*, 533 F.3d at

1   1039 (finding that a plaintiff's "unexplained or inadequately explained failure to

2   seek treatment" provided legitimate reason for rejecting claimant's credibility).

3        **B.    Medical Opinions**

4        Plaintiff also contends the ALJ failed to properly weigh the medical opinion

5   evidence.  ECF No. 13 at 16-19.  In support, Plaintiff faults the ALJ for rejecting

6   the opinions of Dr. Pollack and giving greater weight to the opinions of Dr.

7   Chandler and Dr. Veraldi.  *Id.*

8        There are three types of physicians: "(1) those who treat the claimant

9   (treating physicians); (2) those who examine but do not treat the claimant

10  (examining physicians); and (3) those who neither examine nor treat the claimant

11  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

12  *Holohan*, 246 F.3d at 1201-02 (citations omitted).  A treating physician's opinions

13  are generally entitled to substantial weight in social security proceedings.  *Bray v.*

14  *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  If a treating or

15  examining physician's opinion is uncontradicted, an ALJ may reject it only by

16  offering "clear and convincing reasons" that are supported by substantial evidence

17  in the record.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir.

18  2008); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the

19  ALJ need not accept the opinion of any physician, including a treating physician, if

20  that opinion is brief, conclusory and inadequately supported by clinical findings."

1   *Bray*, 554 F.3d at 1228 (quotation and citation omitted).  If a treating or examining

2   doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

3   reject it by providing "specific and legitimate reasons" that are supported by

4   substantial evidence in the record.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574

5   F.3d 685, 692 (9th Cir. 2009); *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at

6   830-31).

7         Plaintiff contends the ALJ did not give sufficient weight to the findings of

8   examining psychologist, Dr. Dennis Pollack, Ph. D.  ECF No. 13 at 7, 17-19.  Dr.

9   Pollack examined Plaintiff in November 2012, at the request of Plaintiff's

10  representative, and opined that Plaintiff would have marked limitations in her

11  ability to perform activities within a schedule, maintain regular attendance, be

12  punctual within customary tolerances, complete a normal workday or workweek

13  without interruptions from psychologically based symptoms, and perform at a

14  consistent pace without an unreasonable number of rest periods.  Tr. 399-408.

15        This Court finds that ALJ properly evaluated the opinion of Dr. Pollack and

16  reasonably provided the opinions of Dr. Veraldi and Dr. Chandler greater weight.

17  Because Dr. Pollack's opinion was contradicted, *see* Tr. 20-21, the ALJ need only

18  have provided "specific and legitimate" reasoning for rejecting it.  *Bayliss*, 427

19  F.3d at 1216.

20

First, the ALJ found Dr. Pollack's opinion was not supported by the evidence in the record. For instance, the ALJ noted Dr. Pollack's opinion that Plaintiff was unable to complete a normal workday or workweek was not supported by objective findings. Tr. 20. Further, as testified to by Dr. Donna Veraldi, Ph. D., at the hearing, Plaintiff might become depressed once every six months but would not routinely be missing work because of her condition. Tr. 20; *see* Tr. 44. Because Dr. Veraldi was able to review all of the medical evidence and her opinion was consistent with the findings of Dr. Chandler,[2] the ALJ gave Dr. Veraldi's conclusions greater weight. Tr. 21. Because contrary opinions, in addition to objective medical evidence, provide a specific and legitimate reason for rejecting a medical opinion, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), the ALJ provided a specific and legitimate reason for rejecting Dr. Pollack's opinion.

Second, the ALJ noted inconsistencies in Dr. Pollack's own assessment. Although Dr. Pollack opined that Plaintiff had marked limitations in maintaining a schedule and completing a normal work day, the ALJ commented that Dr.

---

[2] The ALJ afforded the opinion of Dr. Samantha Chandler, Psy. D., "significant weight . . . because she was able to examine the claimant personally and her conclusions are consistent with her objective findings during the evaluation." Tr. 19.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

Pollack's notes also indicated Plaintiff suffered no significant limitations in the

majority of the functioning categories. Tr. 20; *see* Tr. 406. Further, although Dr.

Pollack opined that Plaintiff had marked limitations in her ability to perform

activities within a schedule, maintain attendance, or be punctual within customary

tolerances, he also noted that Plaintiff arrived on time or early to her evaluations.

Tr. 20; *see* Tr. 400. Because inconsistencies between a doctor's opinion and his

own reports, provide a specific and legitimate reason for rejecting even a treating

doctor's opinion, *see Bayliss*, 427 F.3d at 1216 (finding a discrepancy between a

doctor's opinion and his other recorded observations and opinions provided a clear

and convincing reason for not relying on that doctor's opinion), the ALJ provided

another specific and legitimate reason for rejecting Dr. Pollack's opinion.

**IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 18) is

        **GRANTED**.

    The District Court Executive is directed to file this Order, enter Judgment

for Defendant, provide copies to counsel, and **CLOSE** the file.

    **DATED** June 12, 2015.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18